**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| HOK BOEN LIONG, *on behalf of himself,* *FLSA Collective Plaintiffs* *and the Class,* | Case No.: |
| Plaintiff, | **CLASS AND** **COLLECTIVE ACTION** **COMPLAINT** |
| v. | Jury Trial Demanded |
| DAI HACHI SUSHI CORPORATION d/b/a DAI HACHI NYC DAI HACHI SUSHI & BAR CORP. d/b/a DAI HACHI SUSHI & BAR 1074 SUSHI CORP d/b/a DAI HACHI SUSHI & BAR UMI SUSHI, INC. d/b/a UMI SUSHI, AI ZHEN ZHENG, a/k/a TONY ZHENG, JOHN DOE a/k/a TIM ZHENG, ZHEN MEI CHENG, | |
| Defendants. | |

---

Plaintiff, HOK BOEN LIONG ("Plaintiff"), on behalf of himself and others similarly

situated, by and through their undersigned attorneys, hereby files this Class and Collective Action

Complaint against Defendants, DAI HACHI SUSHI CORPORATION d/b/a DAI HACHI NYC,

DAI HACHI SUSHI & BAR CORP. d/b/a DAI HACHI SUSHI & BAR, 1074 SUSHI CORP d/b/a

DAI HACHI SUSHI & BAR, UMI SUSHI, INC. d/b/a UMI SUSHI, (collectively, "Corporate Defendants"), AI ZHEN ZHENG a/k/a TONY ZHENG, JOHN DOE a/k/a TIM ZHENG, and ZHEN MEI CHENG ("Individual Defendants" and, together with Corporate Defendants, "Defendants"), and states as follows:

### INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he is entitled to recover from Defendants: (1) unpaid overtime premiums due to a fixed salary; (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from Defendants: (1) unpaid prevailing minimum wage due to a fixed salary, (2) unpaid overtime premiums due to a fixed salary; (3) unpaid spread of hours premiums, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

3.      Plaintiff also alleges that, pursuant to the Earned Safe and Sick Time Act ("ESSTA"), he and similarly situated individuals were not provided any paid time off for the care of themselves and/or family members. Plaintiff and Class Members seek all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

4.      Plaintiff further alleges that, pursuant to Internal Revenue Code, 26 U.S.C. § 7434, he and others similarly situated are entitled to damages and fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

5.      Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also alleges that,

in retaining these sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7.    Venue is proper in the Eastern District pursuant to 28 U.S.C. §1391.

## PARTIES

8.    At all relevant times, Plaintiff HOK BOEN LIONG was a resident of Queens County, New York.

9.    At all relevant times, Defendants have owned and operated the following restaurants located in New York City:

- a)    Dai Hachi Sushi & Bar – 1074 2nd Avenue, New York, NY 10022 ("Dai Hachi Manhattan")

- b)    Dai Hachi Sushi NYC – 46-18 Vernon Boulevard, Long Island City, NY 10011 ("Dai Hachi Queens")

- c)    Umi Sushi – 215 Brighton Beach Avenue, Brooklyn, NY 11235 ("Umi Sushi")

(collectively, the "Restaurants").

10.    The Restaurants are operated as a single integrated enterprise under the common control of Defendants. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose.

- a)    The Restaurants are under the control of Corporate Defendants and Individual Defendant. Specifically, Individual Defendants TIM ZHENG and AI ZHEN ZHENG are siblings who collectively own and operate all the Restaurants:

3

- Individual Defendant TIM ZHENG is advertised as the "backbone and owner of Dai Hachi Sushi" on Dai Hachi Queens' social media page. *See* **Exhibit A.**

- Individual Defendant AI ZHEN ZHENG is listed as the sole principal on Dai Hachi Manhattan's liquor license. *See* **Exhibit B**, screenshot of the New York State Liquor Authority Mapping Project website.

- On Defendants' "about us" section on their website, they publish that the Restaurants are "founded by Tim" and had "opened its doors […] first in Midtown and later expanding to Long Island City, Queens." *See* **Exhibit C**.

b)   After the opening of the Dai Hachi Queens restaurant, it was advertised as being the "second Dai Hachi location, with its first in Midtown East." *See* **Exhibit D**, article titled *Dai Hachi, Sushi Bar and Restaurant, Opens on Vernon Boulevard*, published by QNS.

c)   Employees and managers are transferred among all the Restaurants on an as needed basis. For instance, chefs were required to transfer between locations based on the restaurants' operational needs.

d)   Due to the unique sourcing of sashimi grade fish, all ingredients first go to Umi Sushi, before being distributed to Dai Hachi Queens and Dai Hachi Manhattan.

e)   The Restaurants share centralized human resources that deals with hiring, firing, and administering all the Restaurants' work force. Individual Defendant AI ZHEN ZHENG implemented and oversaw human resource policies for all Restaurants.

f)   The Restaurants implement a common payroll system that is shared by and administered across multiple restaurants at all relevant times.

All Corporate Defendants are appropriately named in this action because the Restaurants share identical illegal wage and hour policies and are under common ownership, management and control. The Restaurants and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the FLSA Collective Plaintiffs, and Class Members for whom Plaintiff seeks to represent.

4

11. Corporate Defendant DAI HACHI SUSHI CORPORATION is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 46-18 Vernon Boulevard, Long Island City, NY 11101.

12. Corporate Defendant DAI HACHI SUSHI & BAR CORP. is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 1074 2nd Avenue, New York, NY 10022.

13. Corporate Defendant 1074 SUSHI CORPORATION is a domestic business corporation organized under the laws of the State of New York with a principal place of business and an address for service of process located at 1074 2nd Avenue, New York, NY 10022.

14. Corporate Defendant UMI SUSHI, INC. is a domestic business corporation organized under the laws of the State of New York with a principal place of business located at 215 Brighton Beach Avenue, New York, NY 11235 and an address for service of process located at 118 E 31st Street, New York, NY 10016.

15. Individual Defendant AI ZHEN ZHENG is the owner and executive officer of Corporate Defendants. AI ZHEN ZHENG exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class Members. AI ZHEN ZHENG exercises the power to (and also delegates to managers and supervisors the power to): (1) fire and hire employees; (2) supervise and control employee work schedules; (3) determine the rate and method of pay; (4) maintain employment records; and (5) otherwise affect the quality and terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees could complain to AI ZHEN ZHENG regarding any of the terms of their employment, and AI ZHEN ZHENG would have the authority to affect any changes to the

quality and terms of their employment. AI ZHEN ZHENG ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendants. AI ZHEN ZHENG had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members and could reprimand employees.

16.     Individual Defendant ZHEN MEI CHENG is the owner and executive officer of Corporate Defendants. ZHEN MEI CHENG exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class Members. ZHEN MEI CHENG exercises the power to (and also delegates to managers and supervisors the power to): (1) fire and hire employees; (2) supervise and control employee work schedules; (3) determine the rate and method of pay; (4) maintain employment records; and (5) otherwise affect the quality and terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees could complain to ZHEN MEI CHENG regarding any of the terms of their employment, and ZHEN MEI CHENG  would have the authority to affect any changes to the quality and terms of their employment. ZHEN MEI CHENG ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendants. ZHEN MEI CHENG had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class Members and could reprimand employees. ZHEN MEI CHENG is listed as a principal on the liquor license of Dai Hachi Queens. *See* **Exhibit E**, screenshot of New York State Liquor Authority Mapping Project website.

17.     Individual Defendant JOHN DOE a/k/a TIM ZHENG is the owner and executive officer of Corporate Defendants. Individual Defendant JOHN DOE a/k/a TIM ZHENG exercised

control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class Members. Individual Defendant JOHN DOE a/k/a TIM ZHENG exercises the power to (and also delegates to managers and supervisors the power to): (1) fire and hire employees; (2) supervise and control employee work schedules; (3) determine the rate and method of pay; (4) maintain employment records; and (5) otherwise affect the quality and terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees could complain to Individual Defendant JOHN DOE a/k/a TIM ZHENG regarding any of the terms of their employment, and Individual Defendant JOHN DOE a/k/a TIM ZHENG would have the authority to affect any changes to the quality and terms of their employment. Individual Defendant JOHN DOE a/k/a TIM ZHENG ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendants. Individual Defendant JOHN DOE a/k/a TIM ZHENG had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class Members and could reprimand employees.

18.    At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

19.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the businesses operated by Defendants.

20.    Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section l6(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, (including but not limited to

hosts, waiters, servers, bartenders, barbacks, food runners, bussers, delivery persons, cooks, dishwashers, food preparers, porters, and employees misclassified as exempt employees) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

22.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper wages, including unpaid overtime premiums due to a fixed salary. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

23.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

24.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all non-exempt employees, (including but not limited to hosts, waiters, servers, bartenders, barbacks, food runners, bussers, delivery persons, cooks, dishwashers, food preparers, porters, and employees misclassified as exempt employees) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

25.     All said persons, including Plaintiff, are referred to herein as the "Class" or "Class

Members." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

26.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. Plaintiff is a member of the Class.

27.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants of: (1) failure to pay the prevailing minimum wage due to a fixed salary, (2) failure to pay overtime premiums due to a fixed salary; (3) failure to pay spread of hours premiums, (4) failing to provide Class Members with proper wage statements with every payment of wages and failing to properly provide proper wage notices to Class Members, at date of hiring and dates of all wage changes, pursuant to NYLL, and (5) failing to provide sick paid time off, pursuant to the ESSTA.

28.    Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages

9

arising from the same unlawful policies, practices and procedures.

29.    Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

30.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is

10

empowered to, fashion methods to efficiently manage this action as a class action.

31. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

32. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiff and the Class Members within the meaning of NYLL;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class Members;

c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class Members for their work;

d)  Whether Defendants properly paid Plaintiff and the Class Members the prevailing minimum wage, due to a fixed salary;

e)  Whether Defendants paid Plaintiff and Class Members overtime premiums, due to a fixed salary;

f)  Whether Defendants paid the Plaintiff and Class Members spread of hours premium for shifts worked in excess of ten (10) hours;

11

g) Whether Defendants provided proper wage notice, at date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of the NYLL; and

h) Whether Defendants provided proper wage statements for each pay period to Plaintiff and Class Members, and whether those wage statements properly stated Plaintiff's and Class Members' overtime compensation and spread of hours in accordance with NYLL.

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

33.     In or around June 2019, Plaintiff was hired by Defendants to work as a cook for Defendants' Dai Hachi Queens restaurant located at 46-18 Vernon Boulevard, Long Island City, New York 11101. Plaintiff was employed by Defendants until in or about November 2022, when he was terminated by Defendants for taking a week off due to a knee injury. Plaintiff was then re-hired in July 2023 as a cook until August 2023.

34.     During both employment periods, Plaintiff was scheduled to work from 9:30 a.m. to 10:15 p.m. Monday through Saturday, for a total of at least seventy-six (76) hours and thirty (30) minutes per week.

*Unpaid Prevailing Minimum Wage Claim*

35.     During the first period of his employment (from June 2019 to November 2022), Plaintiff was paid a fixed salary of $660 per week in cash regardless of how many hours he worked each workweek.

36.     Throughout his first period of employment, Plaintiff's fixed daily pay averaged out at best to $7.84 per hour.

37.     During the second period of his employment (from July 2023 to August 2023), Plaintiff was paid a fixed salary of $465 in check and $100 in cash weekly, regardless of how many hours he worked each workweek.

38.     Throughout his second period of employment, Plaintiff's fixed daily pay averaged out at best to $7.39 per hour.

39.     At all relevant times, the applicable New York minimum wage was $15.00 per hour.

40.     At all relevant times, Class Members were similarly paid under the prevailing minimum wage, due to receiving a fixed salary.

41.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and Class Members proper minimum wage due to being paid a fixed salary.

*Overtime Premium Claims*

42.     Further, across both periods of employment, Plaintiff was not compensated overtime premiums for the hours he worked in excess of forty (40) hours in each workweek due to his fixed salary. Similarly, FLSA Collective Plaintiffs and Class Members were paid on a fixed salary basis without any overtime premium for all hours worked over forty (40) each week.

43.     Throughout his employment, there was never any agreement that Plaintiff's fixed salary was intended to cover the overtime hours worked in excess of forty (40) each week. Similarly, FLSA Collective Plaintiffs and Class Members never had any agreement with Defendants that their fixed salaries would cover their overtime hours.

44.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs, and Class Members overtime premiums due to being paid a fixed salary.

*Spread of Hours Claim*

45.     Throughout his employment, as mentioned above, Plaintiff regularly worked twelve (12) hours and forty-five (45) minutes per shift. Despite working shifts that exceed a spread of ten (10) hours, Plaintiff was not paid any spread of hours premiums. Similarly, Class Members who were required to work hours in excess of ten (10) hours were never paid spread of hours premiums.

46.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff and Class Members their owed spread-of-hours premiums.

*Fraudulent Filing and Unjust Enrichment Claims*

47.     During Plaintiff's second employment period, Defendants paid Plaintiff and Class Members in both personal check and cash. As a result of paying Plaintiff by cash and check, Defendants failed to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with accurate IRS Forms W-2 for all the tax years of their employments and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff, FLSA Collective Plaintiffs, and Class Members. In failing to account for these monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable to Plaintiff, FLSA Collective Plaintiffs, and Class Members for at least five thousand dollars per each fraudulent filing, which would have to be at least once per year.

48.     In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contract with Plaintiff and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

49.     Defendants also unjustly enriched themselves at the expense of Plaintiff and Class Members by retaining monies that should have been remitted to the IRS on Plaintiff's and Class Members' behalf.

50.     As a result, Plaintiff and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

51.     The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and each Class Member 7.65% of all their earnings from Defendants beginning six (6) years prior to the filing of this Complaint.

*WTPA Claims*

52.     At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA"), incorporated into the NYLL.

53.     At all relevant times, Defendants paid Plaintiff and Class Members in cash and failed to provide any paystubs to them with every weekly payment.

54.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

55. New York courts continue to find sufficient standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, \*61 (S.D.N.Y. February 23, 2026) (internal citations removed).

56. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez*. By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

57. By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of benefits available to the employee—such as

16

unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

58.    Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants' intentional hiding of that information, Plaintiff and Class Members accepted employment with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

59.    Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

*ESSTA Claim*

60.    At all relevant times, Defendants employed 5 or more employees but failed to provide their employees with paid sick time in violation of the ESSTA.

61.    During his employment, Plaintiff badly injured his knee. Following the incident, Plaintiff requested sick time-off to let his knee heal but Defendants denied Plaintiff's request and terminated him when he did not show up to his regularly scheduled shift the next day.

62. Defendants violated the ESSTA by denying Plaintiff compensated time-off and terminating him.

63. At all relevant times, Defendants failed to provide Plaintiff and Class Members with forty (40) hours of paid sick leave each calendar year. As a result, Plaintiff and Class Members were either (i) required to work while sick, or (ii) forced to take sick leave without pay.

64. Defendants failed to provide Plaintiff and Class Members with paystubs during the statutory period, thereby depriving them of any information regarding their accrued and total leave.

65. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**
**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

66. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

67. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

68. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

69. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

70.    Defendants knowingly and willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them overtime premiums for all hours worked in excess of forty (40) each week, due to fixed salary.

71.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

72.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

73.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

74.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime premiums, due to fixed salary, plus an equal amount as liquidated damages.

75.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**VIOLATION OF THE NEW YORK LABOR LAW**

76.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

77.    At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

19

78.    Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them the prevailing minimum wage, due to a fixed salary.

79.     Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them overtime premiums for all hours worked in excess of forty (40) each week, due to fixed salary.

80.    Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay spread of hours premiums for shifts exceeding a spread of ten (10) hours.

81.    Defendants failed to properly notify employees of their overtime pay rate, in direct violation of NYLL.

82.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by NYLL. Defendants are required to provide accurate and proper information on wage statements issued to employees in accordance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because they did not provide wage statements with the accurate number of Plaintiff's and Class Members' hours worked.

83.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with proper wage notices, at date of hiring and at dates of all wage changes thereafter, as required under NYLL.

84.    Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid minimum wage, due to a fixed salary, unpaid overtime premiums, due to fixed salary; reasonable attorneys' fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to NYLL.

**COUNT III**
**CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS**
**UNDER 26 U.S.C. § 7434(a)**

85.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

86.    Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

87.    By failing to provide Plaintiff and Class Members with accurate IRS Forms W-2 for 2023 during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

88.    Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code. Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

**COUNT IV**
**UNJUST ENRICHMENT**

89.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

90.    To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone &*

21

*Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

91.    Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. This came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

92.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## COUNT V

## VIOLATION OF THE EARNED SAFE AND SICK TIME ACT

93.    Plaintiff realleges and incorporates all of the foregoing paragraphs as if fully set forth herein and further alleges as follows.

94.    Defendants are employers covered by ESSTA's sick leave provision which requires "employers with between five and ninety-nine employees in any calendar year," to provide their employees "with up to forty hours of paid sick leave in each calendar year." NY Lab. Law § 196-B(1)(b).

95.    Defendants are required to give employees sick leave upon oral or written request for "a mental or physical illness, injury, health condition of such employee . . . regardless of whether such illness, injury, or health condition has been diagnosed or requires medical care at the time that such employee requests such leave." NY. Lab. Law § 196-B(4)(a).

96.    Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper paid safe and sick leave as required under the ESSTA.

22

97.    Due to Defendants' ESSTA violations, Plaintiff and Class Members seek all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, and the NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid prevailing minimum wage, due to receiving a fixed salary under the NYLL;

d.    An award of unpaid overtime premiums, due to receiving a fixed salary under the FLSA and NYLL;

e.    An award of unpaid spread of hours premiums for shifts worked in excess of ten (10) hours under the NYLL;

f.    An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

g.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all overtime hours worked, pursuant to 29 U.S.C. § 216;

h.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all overtime hours of work, pursuant to NYLL;

i.  An award of statutory damages to Plaintiff and each Class Member under 26 U.S.C. § 7434;

j.  Disgorgement from Defendants of all illegally retained sums that should have gone into FICA contributions;

k.  All applicable compensatory and punitive damages under the ESSTA;

a.  An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

b.  Designation of Plaintiff as a Representative of the FLSA Collective Plaintiffs;

c.  Designation of this action as a Class Action pursuant to FRCP 23;

d.  Designation of Plaintiff as a Representative of the Class; and

e.  Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: July 9, 2026

Respectfully submitted,

By:   */s/ C.K. Lee*

C.K. Lee, Esq.
LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188

Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs and the Class*